## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

DERRICK YATES,

      PLAINTIFF,

v.                                        CASE NO. CV-13-J-981-NE

ALABAMA AGRICULTURAL AND
MECHANICAL UNIVERSITY,

      DEFENDANT.

### MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 18), brief in support of said motion (doc. 19) and evidentiary submissions (doc. 20). The plaintiff filed a brief in opposition (doc. 23) and further evidence (doc. 25). The defendant thereafter filed a reply (doc. 28).

### I.  FACTUAL BACKGROUND

After many years of employment with defendant as an Instructor of Music, Assistant Band Director and finally Interim Band Director, the plaintiff was terminated for failing to be awarded tenure. The plaintiff asserts he was not given tenure based on discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq,* on the basis of his gender. After filing an EEOC charge for gender discrimination, the plaintiff asserts the defendant

retaliated against him, also in violation of Title VII, and filed an amended EEOC charge alleging the same.

The plaintiff first began working for defendant in 1997 as Adjunct Coordinator of Logistics and Band Equipment.  Plaintiff depo. at 23.  In 2001, plaintiff became a full faculty member, tenure track, as a Music Instructor and Assistant Director of Band.  Plaintiff depo. at 27.  Upon the Director of Band's retirement in 2010, plaintiff became Interim Director of Bands.  Plaintiff depo. at 44; defendant ex. B1.  Dean of the School of Education, Larry Powers, made this recommendation, but also recommended that a formal search for Director of Bands be undertaken.  Plaintiff depo. at 52-54.  At that time, Music was within the Department of Fine Arts, chaired by Horace Carney.  Plaintiff depo. at 58-59, 62.

Prior to this time, in 2008, the plaintiff first applied for promotion and tenure.  Plaintiff depo. at 64, 73.  In order to be promoted from Instructor to Assistant Professor, either peer reviewed scholarly works or creative works were required by University policy.  Plaintiff depo. at 57.  Plaintiff's first  application for promotion and tenure was denied and plaintiff appealed that decision.  Plaintiff depo. at 81.  The University-wide committee overturned the denial of tenure and recommended granting the same, but not promotion.  Plaintiff depo. at 81, 89-90.  Dr. Juarine Stewart, Provost of the University at that time, notified plaintiff of this

recommendation.  Plaintiff depo. at 88-90.  Dr. Stewart forwarded that committee recommendation to the then President of the University, Dr. Beverly Edmond, who told plaintiff that because he could not be tenured without promotion, his request for tenure was denied.  Plaintiff depo. at 90-91, 93.  She cited his lack of evidence of scholarly productivity, presentations, or publications as the basis for the decision, and notified plaintiff that 2009-2010 would be plaintiff's last year of employment with the University.  Plaintiff depo. at 95-96, 111; defendant ex. D6.  Plaintiff does not allege any discrimination occurred in the denial of his first application for promotion and tenure.[1]  Plaintiff depo. at 98.

In 2009 Dr. Andrew Hugine became president of the University.  Plaintiff depo. at 143.  Dr. Hugine notified the plaintiff in 2009 that plaintiff's probationary period was extended through the 2012-2013 school year, with the requirement that the plaintiff apply for promotion and tenure again by that time.  Plaintiff depo. at 93-94, 144-145; plaintiff ex. G72 at AAMU0377.  The practice of the University was, and remains, termination of a faculty member that does not achieve tenure during the probationary period.  Wims[2] depo. at 68.

---

[1] While the evidence submitted by plaintiff in support of his first application for tenure demonstrates numerous honors and recognition for the University's Marching Band (defendant ex. B13), those achievements were deemed insufficient for promotion and tenure, and the plaintiff agreed that no discrimination occurred in that decision.

[2] Dr. Daniel Wims replaced Dr. Stewart as Provost in April 2010.  Wims depo. at 17.

3

Plaintiff reapplied for promotion and tenure in the Fall of 2010.  Plaintiff depo. at 150.  Plaintiff met with Dr. Carney, Dr. Powers, and Dr. Daniel Wims to clarify what plaintiff needed to provide as evidence of scholarly works and publication. Plaintiff depo. at 151.  Both Dr. Carney and Dr. Powers made recommendations in support of plaintiff.  Defendant ex. B13 at AAMU0856, 859.  According to plaintiff, after reviewing what plaintiff already had in his dossier, Dr. Wims agreed that the contents did constitute "peer reviewed, scholarly works."  Plaintiff depo. at 151, 153-154, 158-159.  Based on this representation by Dr. Wims, in his 2010 application the plaintiff  provided substantially the same achievements as in his prior application, supplementing where appropriate.  Plaintiff depo. at 160, 165.

The Departmental Committee recommended the plaintiff for promotion and tenure.  Plaintiff depo. at 173; defendant ex. B13 at AAMU0860.  Thus, plaintiff's application was forwarded to the School of Education Committee, which again recommended the plaintiff for promotion and tenure.  Plaintiff depo. at 175-176; defendant ex. B13 at AAMU0857-58; plaintiff ex AAMU0854-55.  However, Plaintiff learned from a phone call from Dr. Wims in May 2011 that his application for tenure was again denied.[3]  Plaintiff depo. at 179.  Dr. Wims added that although

---

[3]The question of promotion and tenure applied only to plaintiff's positions as an Instructor of Music.  Wims depo. at 32.  It was not an issue with regard to his role as Interim Director of Bands.  *Id.* at 32-33.  However, Dr. Wims agreed that plaintiff was never informed by him that his activities with the marching band would not count as creative works for purposes of

4

all three committees, including the University Committee, recommended the plaintiff for promotion and tenure, Dr. Wims was recommending to Dr. Hugine that plaintiff be denied the same, based on lack of peer reviewed scholarly works. Plaintiff depo. at 179-180. In June 2011 Dr. Hugine adopted the recommendation that the plaintiff's request for tenure and promotion be denied. Defendant ex. B21. After plaintiff received this decision and appealed, the appeals committee upheld the denial on this basis. Plaintiff depo. at 192, 314; defendant ex. B13 at AAMU0839; defendant ex. B24. Dr. Wims never indicated that the decision on promotion and tenure had anything to do with plaintiff's gender. Plaintiff depo. at 191. Similarly, nothing indicated that the appeals committee considered the plaintiff's gender. Plaintiff depo. at 315. However, as the plaintiff believes his dossier was sufficient to qualify him for promotion and tenure, he further believes the failure to receive the same was due to discrimination. Plaintiff depo. at 272. The plaintiff further alleges that the discrimination was on the part of Dr. Hugine as President and Dr. Wims as Provost. Plaintiff depo. at 277. He does not believe the appeals committee discriminated against him, although they upheld the denial of tenure. Plaintiff depo. at 277-278,

---

tenure as a music instructor. Wims depo. at 107-108. He also stated that the marching band activities were considered in the tenure decision. Wims depo. at 109-110.

280-281.    According to Wims, he merely forwards the decision of the Appeals Committee to the President.  Wims depo. at 148.

The plaintiff recognized that the Handbook governing tenure and promotion procedures expressly stated that the process of granting promotion or tenure involves determinations which "are inherently subjective in their nature" and that decisions are "vested in the absolute discretion of the committee to make its recommendation and the Provost and President in making final decisions concerning applications." Plaintiff depo. at 271. Yet plaintiff points to a female Instructor, Jennie Couch, who received promotion and tenure after appeal when plaintiff did not.  Plaintiff depo. at 272-273.  He compares his qualifications against hers, although her area of expertise is pottery, not music.[4]  Plaintiff depo. at 361-362.

In September 2011, the plaintiff met with Dr. Wims for a wholly separate reason, but Dr. Wims told plaintiff he was standing behind his decision to deny tenure and that the plaintiff could just sue.  Plaintiff depo. at 292.  Also in September 2011 plaintiff received a letter from Dr. Hugine that he was upholding the decision of the appeals committee to deny plaintiff tenure, and thus the 2011-2012 school year would

---

[4]Whether this court, or a jury, would find Ms. Couch more or less or equally qualified for promotion and/or tenure is not the issue before this court.  Rather, the issue is whether there is any evidence that plaintiff and Ms. Couch were similarly situated and treated differently *because of their gender*.  Similarly, whether the University should have found plaintiff's dossier sufficient to establish scholarly works, presentations and publications is not a proper inquiry for this court, unless such decision was based on plaintiff's gender and not his merit as an Instructor.

be plaintiff's terminal year of employment.  Plaintiff depo. at 318-319; defendant ex. B26.  The plaintiff agrees that Dr. Hugine agreeing with the committee was not a discriminatory act.  Plaintiff depo. at 318-319.

Plaintiff filed an EEOC charge of discrimination in March 2012.  Plaintiff depo. at 368; defendant ex. B32.  He alleged defendant began retaliating against him thereafter, by such things as reinstating band scholarships and having him investigated for misuse of a van, a gas card and band account monies.  See plaintiff ex. G72.

Dr. Jeffery Burgin, Vice President of Student Affairs, reinstated scholarships for band members after plaintiff removed or reduced them as punishment for failing to attend band practices.[5]  Plaintiff depo. at 375-376; Burgin depo. at 21.  Plaintiff viewed Dr. Burgin's decision as undermining his authority and interfering with his ability to maintain discipline and performance.  Plaintiff depo. at 381-383.

Plaintiff also suggests that scholarships for the band were reduced in retaliation against him, but admits there were budgetary issues.  Plaintiff depo. at 385-386.  He also agrees he knew about the reduction in the number of scholarships in January

---

[5]Dr. Burgin became Interim Vice President of Student Affairs in 2008 and became Vice President of Student Affairs in 2012.  Burgin depo. at 21, 23.  In early 2012, oversight of the marching band was placed under Dr. Burgin.  Burgin depo. at 80-81.  The remainder of the bands were within the academic side of the organizational chart and hence reported to Dr. Carney.  Burgin depo. at 126-128.

2012, prior to filing of his EEOC Charge.  Plaintiff depo. at 418, 420; defendant ex. B35.  He further asserts that the defendant interfered with his relationship with a vendor by investigating plaintiff's use of a van.  Plaintiff depo. at 386-388, 391. Burgin depo. at 144.  Therefore, in July 2012, the plaintiff filed an amended charge to include these various actions against him.  Defendant ex. B33.

The plaintiff was terminated by defendant in May 2013.[6]  Burgin depo. at 93; plaintiff ex. G66.  Upon the conclusion of his employment in May 2013, the position vacancy for Director of Bands was advertised by defendant, and the plaintiff applied. Plaintiff depo. at 347, 350.   The plaintiff asserts, in addition to his other claims, that he was not selected for this position in retaliation for his March 2012 EEOC charge. Plaintiff depo. at 351.  According to plaintiff, Dr. Wims would not comment on plaintiff's application for the position until the EEOC charge was concluded.

---

[6]Because plaintiff served in dual roles, both as a Music Instructor and as Interim Director of Bands, Dr. Burgin recommended plaintiff's termination in May 2013 as Interim Director of Bands.  Burgin depo. at 91-93.  Burgin had no input or authority concerning whether plaintiff was retained or terminated as an instructor, and allegedly did not know 2013 was plaintiff's terminal year as an Instructor.  Burgin depo. at 91.  Similarly, Dr. Wims alleged that plaintiff's performance as a Band Director had no bearing on the termination of his employment as a Music Instructor, tenure track.  Wims depo. at 166.

Burgin refused to respond to why the decision was made in May 2013 to fill the Band Director on a permanent basis, repeatedly testifying only that "a no cause termination was made, or recommended and approved so that we could fill the position permanently."  Burgin depo. at 91-102.  Additionally, when asked why he did not discuss filling the position with plaintiff, Burgin again avoided the question, stating "The University was moving forward and creating a permanent position.  A no cause termination was issued."  Burgin depo. at 110-112.  Dr. Wims also side stepped the question as to plaintiff serving as Band Director, stating that he did not "recall any discussions with Mr. Yates" upon being asked if he knew plaintiff wished to be made Director of Bands.  Wims depo. at 174.  He further stated he did not know that plaintiff had applied for the position.  Wims depo. at 179.

Plaintiff depo. at 351-352.  Dr. Wims denied knowing the plaintiff filed an EEOC charge.[7]  Wims depo. at 182.  However, Dr. Carney asserts by signed statement that on May 11, 2012, he personally discussed plaintiff with Dr. Wims and Dr. Wims stated at that time that he would not comment on plaintiff until the EEOC charge was resolved.  Plaintiff ex. J.

In essence, the plaintiff disputes whether the contents of his dossier demonstrate peer reviewed scholarly works. *See e.g.*, plaintiff response at 18.  He asserts they do, the defendant found they did not.  Regardless of whether the plaintiff's achievements are of the nature and kind that should qualify as scholarly works and hence the defendant should have promoted the plaintiff and granted him tenure, that question  is not within the province of this court to decide.  Rather, the court can only consider whether the plaintiff's gender illegally played a role in the decision to deny the plaintiff promotion and tenure.

Plaintiff was hired by Stillman College in June 2013, still in an untenured position.  Plaintiff depo. at 406-407.

---

[7]In fact, Dr. Wims denied knowing that the plaintiff had been terminated.  Wims depo. at 26.

## II.  STANDARD FOR EVALUATING SUMMARY JUDGMENT

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir. 1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970).  Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp*., 907 F.2d 1077, 1080 (11th Cir. 1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts

showing that there is a genuine issue for trial.  *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).  In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable.  *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986).  Speculation does not create a genuine issue of fact.  *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir. 2005).

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence.  *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir. 2001); *Stewart v. Booker T. Washington Insurance*., 232 F.3d 844, 848 (11th Cir. 2000).

### III.  LEGAL ANALYSIS

*A.  Discrimination*

A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination.  *Wilson v. B/E Aerospace, Inc*,. 376 F.3d 1079, 1088 (11th Cir. 2004), citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 147-48, 120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000).

11

Plaintiff asserts that he did not receive tenure or promotion due to gender discrimination.  As the court can find no direct evidence of discrimination, the court must apply the three prong test fashioned by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973), as required for circumstantial evidence. *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981).  First, the plaintiff must establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee.  *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997).  Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir. 1996).  The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir. 1987).

An employer's stated reason is not a pretext unless it is shown that both: (1) the reason was false; and (2) the real reason was unlawful. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). A plaintiff may show a pretext either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). In both instances, a plaintiff must show pretext with "concrete evidence in the form of specific facts." *Bryant*, 575 F.3d at 1308. Mere "conclusory allegations and assertions" will not suffice. *Id.*

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.  The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

The plaintiff meets his prima facie burden of proof by establishing that (1) he is a member of a protected class; (2) he was qualified for the position;  (3) he was subjected to an adverse employment action; and (4) he was treated less favorably by his employer than similarly situated employees outside his protected class. *Maynard v. Board of Regents of Div. of Fla. Dep't of Educ.,* 342 F.3d 1281, 1289 (11th Cir. 2003)*; Rice-Lamar v. City of Fort Lauderdale,* 232 F.3d 836, 842-43 (11th Cir. 2000); *EEOC v. Joe's Stone Crab, Inc.,*  220 F.3d 1263, 1286 (11th Cir. 2000).  "To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects...."  *Knight v. Baptist Hosp. of Miami, Inc*., 330 F.3d 1313, 1316 (11th Cir. 2003) (internal quotation marks omitted).

In the context of challenging a tenure decision, the Middle District of Alabama pointed to a Seventh Circuit Court of Appeals decision in support of the notion that

> Plaintiff's burden is extremely difficult to carry "[d]ue to the layered and subjective nature of the tenure process, and the courts' recognition that such decisions are based on the fine 'distinction between competent and superior achievement.'" *Sinha v. Bd. Of Trustees of the Univ. of Ill.,* 2001 WL 921718, at 14 (N.D.Ill.2001) (quoting *Kuhn v. Ball State Univ*., 78 F.3d 330, 331 (7th Cir. 1996). *See also Namenwirth v. Bd. of Regents of Univ. of Wis. System*, 769 F.2d 1235, 1242 (7th Cir. 1985) ("Tenure requires something more; it requires that the department believe that the candidate ha[s] a certain amount of promise.").
> Further a university's decisions to award tenure "necessarily rely on subjective judgments about academic potential. Experienced faculty members may well come to different conclusions when confronted with voluminous and nuanced information about a colleague's overall

capacity to make a long-term institutional contribution." *Vanasco v. Nat'l–Louis Univ.*, 137 F.3d 962, 968 (7th Cir. 1998).  For this reason, courts generally are hesitant to "second-guess the expert decisions of faculty committees...." *Id*.; see also *Kumar v. Bd. of Trustees, University of Mass.*, 774 F.2d 1, 15 (1st Cir. 1985) (Campbell, C.J., concurring) ("Indeed, in a university setting, especially where questions of faculty tenure are involved, a court's duty to refrain from inadvertently setting up its own standard is, if anything, greater than the duty of the labor board not to impose its own business standards on the ordinary business employer.").

*Jun Zhang v. Troy University,* 2012 WL 3631547, 9 (M.D. Ala. 2012).

Assuming, without deciding, that the plaintiff could satisfy his prima facie case, the defendant sets forth an explanation for its actions that is not discriminatory in nature.  *See e.g., Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir. 1999).  Defendant's burden to articulate a non-discriminatory reason for failing to hire a plaintiff is a burden of production, not persuasion, and involves no credibility determination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also Vessels*, 408 F.3d at 769 (noting that there is no credibility determination made when the employer proffers a legitimate, non-discriminatory reason).  Accordingly, this burden has been described as being "exceedingly light." *Vessels*, 408 F.3d at 769–70.

Here, the defendant asserts plaintiff was denied tenure because he lacked any peer-reviewed scholarly works.[8]  As stated previously, whether or not this was, in fact, true is not a determination for this court to make.  Rather, the plaintiff bears the burden of showing that this reason was false and that discrimination was the real reason for the denial of tenure and promotion.

Because defendant has met its burden, the presumption of discrimination is eliminated and the plaintiff must "come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination." *Vessels*, 408 F.3d at 771.  The plaintiff is not allowed to recast the employer's reasons or to substitute his business judgment for the employer's judgment. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) .

As the Eleventh Circuit recently reiterated

...in enacting Title VII Congress did not intend to transform federal courts into a "super-personnel department that reexamines an entity's business decisions." *Chapman*, 229 F.3d at 1030 (citation & internal quotation marks omitted). Our job is instead to determine "whether the employer gave an honest explanation" to justify its hiring decisions. *Id*.

---

[8]For example, plaintiff argues that "whether Yates had sufficient 'peer reviewed or refereed or scholarly work,' there is a genuine issue of material fact remains (sic) as to whether the work he presented qualified him for tenure and promotion." Plaintiff's brief, at 17.  The plaintiff misunderstands his burden.  The issue is not whether plaintiff's work included items which were in fact peer reviewed or scholarly.  Rather, the proper issue is whether or not defendant's finding a lack of such peer reviewed or scholarly works was because plaintiff is a man and hence no more than a pretext for discrimination.

16

> If the employer gives one, we're not in a position to "second-guess [its] business judgment," *id.* Because Kidd's argument regarding why she was more qualified than Seo calls into question Mando's business judgment—not its honesty—it is one we must reject.

*Kidd v. Mando American Corp.*, 731 F.3d 1196, 1207 (11th Cir. 2013).

Plaintiff fails in his burden to demonstrate pretext. Plaintiff admits his 2010 application was substantially similar to the application he submitted in 2008. He admits that the decision in 2008-2009 of the denial of tenure was not discriminatory. Plaintiff's 2010 application was denied for the exact same reasons given in 2008. Plaintiff offers no suggestion as to how the same result based on the same materials submitted can be nondiscriminatory one year and discriminatory two years later.

More importantly, lacking from the evidentiary submissions is any evidence at all that the plaintiff's gender was considered in making tenure and promotion decisions. The fact that a female instructor who specialized in ceramics was awarded tenure after appeal and the plaintiff was not is simply not enough to establish discrimination, even if the court could find their relative qualifications were otherwise identical. The court can find no evidence to support a genuine issue of material fact concerning the role the plaintiff's gender played in the denial of tenure. It played no role at all. Such a finding is supported by the lack of any evidence otherwise, by the fact that almost all of the decision makers involved, and specifically

Dr. Hugine and Dr. Wims are, in fact, men, and that a man was ultimately hired to fill the Director of Band position. Plaintiff depo. at 341. Furthermore, the plaintiff offers no evidence to demonstrate a pattern or practice of the defendant discriminating against men in tenure decisions. Rather, plaintiff's sole evidence on the issue of gender is that Jenny Couch, who is female, received tenure and promotion while he did not. Because plaintiff cannot demonstrate the defendant's explanation to be false, the court must grant judgment in defendant's favor on this claim. *See e.g., Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (explaining that plaintiff cannot create a triable pretext issue by raising a question about the correctness of the facts underlying an employer's explanation without impugning the employer's honest belief that those facts are true). The sole fact that Couch is female is not sufficient to meet plaintiff's burden of demonstrating that gender played any role in the decisions.

Here, the plaintiff asserts that "reasonable minds could differ as to whether Yates was qualified for promotion and tenure." Plaintiff's brief at 18. That is not a decision for a trier of fact to make. Rather, the question to be answered under the facts here is whether the denial of promotion and tenure was based on plaintiff's gender, and whether defendant's suggestion otherwise is mere pretext. In other

words, whether or not plaintiff actually has peer reviewed and/or scholarly works is not this court's concern.

Having considered the foregoing, and being of the opinion that the plaintiff has failed to demonstrate any genuine issue of material fact on his claim of gender discrimination, such that a jury could find in his favor on this claim, the court shall grant the defendant's motion for summary judgment on this claim by separate order.

**B.  Retaliation**

As to plaintiff's claims for retaliation, under Title VII the plaintiff does not have to prove the underlying claim of discrimination in order to establish a retaliation claim. *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir. 1999).  To establish a prima facie case of retaliation for engaging in protected activity, the court must use the *McDonnell-Douglas* burden shifting standard, discussed in detail, *supra*.

A plaintiff must show that: "(1) he participated in an activity protected by Title VII; (2) he suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). The Supreme Court has declared that the ultimate issue is whether the retaliation would not have occurred but for the protected conduct. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013).

19

Title VII's anti-retaliation provision "does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace," but also covers those actions that are "materially adverse to a reasonable employee." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57, 126 S.Ct. 2405, 2409, 165 L.Ed.2d 345 (2006). Under this standard, the plaintiff must show that the employer's actions were so adverse as to discourage a reasonable employee "from making or supporting a charge of discrimination." *Id.* Whether an employment action is adverse is "a question of fact, although one still governed by the traditional rules governing summary judgment." *Hyde v. K.B. Home, Inc.*, 355 Fed. Appx. 266, 268 (11th Cir. 2009) (citing *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 828–29 (11th Cir. 2000)).

If the employer then articulates a legitimate reason for its actions, the plaintiff must show that the "proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008) (quoting *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999)). To show pretext, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quotation omitted).

20

Plaintiff's March 2012 EEOC charge was protected activity for purposes of Title VII.[9]  The plaintiff alleges he was then subjected to three adverse actions in retaliation for filing that Charge.  First, he asserts Dr. Burgin, Vice President for Student Affairs, reinstated scholarships to students after plaintiff had reduced the same for disciplinary reasons.  Burgin testified that he did reinstate scholarships reduced by plaintiff because

> there was no rhyme or reason, or it was very arbitrary as to how the scholarships were being taken and then those dollars being awarded to other students.  So, the conversation was had with the Director of Financial Aid as to reinstate those.  But Mr. Yates was made aware of that.

Burgin depo. at 153.  He did not discuss this with plaintiff before reinstating them. Burgin depo. at 154; plaintiff ex. I at AAMU-YATES-03407.  He later clarified that with the understanding that there were enrollment issues at the University, to then arbitrarily remove scholarships from one student and give them to another was the issue, not that it was being done for discipline reasons.  Burgin depo. at 198. Additionally, although Burgin asserted he reversed these scholarship decisions because they seemed arbitrary to him, he also freely admits he never discussed these decisions with plaintiff. *See* Burgin depo. at 153-154.

---

[9]The notice of this charge sent to defendant was actually dated April 6, 2012.  Defendant ex. B32, AAMU0398.  A further Notice and a request for defendant to provide a statement was dated August 1, 2012.  Defendant ex. B33, AAMU0362

Adverse employment actions encompass more than ultimate employment decisions, such as the decision to discharge an employee, as long as the action complained of reaches some threshold level of substantiality, such as a serious and material change in the terms, conditions or privileges of employment. *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)(citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)); *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). The relevant inquiry is whether a reasonable person would view the employment action in question as adverse. *Doe v. Dekalb*, 145 F.3d 1441, 1448-49 (11th Cir. 1998).  Retaliatory adverse employment actions are those that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (citation and internal quotation marks omitted). Even under this more relaxed standard, however, there exists a materiality requirement "to separate significant from trivial harms." *Id.* While the court must consider the "totality of the alleged reprisals," it will "consider only those that are truly adverse." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006) (citation and internal quotation marks omitted).

The plaintiff describes the effect of Burgin's actions in removing his scholarship decisions as a complete undermining of his authority and ability to maintain discipline.  Even if true, the court can find no support for a finding that the undoing of a disciplinary decision is within the realm of "materially adverse employment actions" and the plaintiff fails to cite any cases which would lend support to his assertion.

Next, plaintiff complains that the defendant's Department of Public Safety, which also falls within Burgin's area of control, investigated him for misuse of University vehicles, a gas card, and band fund accounts.  *See* Burgin depo. at 147; Wims depo. at 192.  Each of these inquiries occurred within a few months of plaintiff filing his charge with the EEOC.  Dr. Wims was aware of each of these allegations because each was brought to his attention by the assistant director of bands, Sherryl Forman.[10]  Wims depo. at 186-191.  Dr. Wims told her to share her concerns with the Chief of Campus Police, but did not know the police then investigated each of these allegations.  Wims depo. at 185, 191-192, 199.

---

[10]In 2008, Sherryl Forman had brought an EEOC charge against the defendant for hostile work environment, accusing plaintiff of creating such an environment.  Ruble depo. at 21-22.

23

Shortly after filing his EEOC Charge, a University van plaintiff had at his home was "recovered" by the defendant.  Ruble[11] depo. at 16.  Officer Ruble spoke with Forman on June 21, 2012, who told him plaintiff was collecting money which was used to repair instruments, and she did not like being in the middle of the money being collected.  Ruble depo. at 18; plaintiff ex F18.  Ruble reviewed the band foundation account and found nothing unusual.  Ruble depo. at 25-26.  Similarly, he reviewed the purchase of uniforms and warm up suits for the band and found nothing irregular.  Ruble depo. at 43.

In regard to the allegations of wrongdoing with University vehicles, Burgin testified that plaintiff did nothing wrong, was absolved of any wrongdoing, and that Burgin was not even notified of any investigation concerning the vehicles or gas card until after it was concluded.  Burgin depo. at 108.  However, on June 26, 2012, Ruble received a text message from Burgin asking for an update on this very investigation.[12]  Ruble depo. at 28-30, 69: plaintiff ex. F90.

Although defendant argues none of these investigations are adverse employment actions, the court disagrees.  A police investigation close on the heels

---

[11]Brian Ruble is a police officer/investigator with the University police.  Ruble depo. at 6-7.

[12]An email dated June 26, 2012, and time marked at 6:24 a.m., from Burgin to Yates, requests Yates provide Burgin the number of students confirmed for the marching band for the upcoming year, by each classification.  The text message from Burgin to Ruble is time marked 6:43 a.m. that same date.

24

of an EEOC charge has been held "to rise above 'trivial harms' because it is likely that the initiation of an internal investigation against an employee would dissuade a reasonable worker from making or supporting a charge of discrimination. *See Entrenkin v. City of Panama City Florida*, 376 Fed.Appx. 987, 995 (11th Cir. 2010). The fact that the plaintiff was ultimately found to have done nothing improper does not lessen the effects of having a formal investigation into his business practices openly and publicly undertaken.[13]

Finally, plaintiff states he was not considered for the Director of Bands position. In regard to the defendant not considering plaintiff for the permanent Director of Bands position, the defendant argues that position was filled too remotely in time to be causally related to plaintiff's protected activity. While proximity to protected activity alone is sufficient to satisfy plaintiff's burden of establishing a causal connection, *see e.g.*, *Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007), the absence of close temporal proximity is not fatal to plaintiff's claim. Rather, a plaintiff may establish causation by showing that his employer knew of a protected activity, and that a series of adverse employment actions commenced

---

[13]Similarly, defendant's argument that plaintiff must not have considered the defendant's actions adverse because plaintiff filed this action in May 2013, so none of the "adverse actions" dissuaded plaintiff from engaging in further protected conduct, is simply comical. *See* defendant's memorandum (doc. 19), at 51 n. 25. In May 2013 the plaintiff was terminated. Thus, on May 23, 2013, when the plaintiff filed this lawsuit, the plaintiff no longer had a job to lose.

shortly thereafter.  *See e.g., Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998).

Dr. Burgin, who made the selection for the position, claims he never knew plaintiff had filed an EEOC charge against the University.  Burgin depo. at 143, 191-192.  Burgin further testified that he never discussed the permanent position with plaintiff, and that plaintiff never brought it up to him.  Burgin depo. at 110-111, 117.  When pressed by counsel during his deposition, Burgin would only repeat that "[t]he University was moving forward and creating a permanent position.  A no cause termination was issued."[14]  Burgin depo. at 111.  *See also* Burgin depo. at 117.

---

[14]This was also Burgin's explanation for why the decision was made in May 2013 to find a permanent Director of Bands.  The testimony was as follows:

> Q. ... Why didn't you decide, then, to make the position permanent in 2012?
> A.  The decision was made in May 2013 to move forward and advertise for the position, and a no cause termination was issued
> ....
> Q.  Who made the decision?
> A.  I made the recommendation.
> Q.  Who made the decision?
> ...
> A.  I made the recommendation, and it was approved through appropriate protocols to the Executive Vice President.
> Q.  Dr. Rolle?
> A.  Yes.
> ....

Burgin depo. at 93-95.

> Q.  And this decision we've been speaking of is the decision to make a permanent Director instead of an Interim Director of the band, right?
> ...
> A.  A recommendation was made for the no cause termination, and it was approved.
> ...
> Q.  Okay.  Who made that decision?
> ...

However, Burgin testified he was the individual who reviewed the applications and made a decision.[15]   Burgin depo. at 122, 130.   He claims to have no memory of plaintiff's May 14, 2013 application.  Burgin depo. at 135, 137.  Further when asked whether plaintiff was considered for the position, Burgin responded, "All applicants who made the cut were considered for the position."  Burgin depo. at 135.  Dr. Wims

---

Q.  To make the Band Director permanent instead of interim?
...
A.  The recommendation was made and it was approved.
Q.  And the recommendation was made by whom?
A.  Myself.
Q.  And who approved it?
A.  Dr. Rolle.
Q.  And did anybody above Dr. Rolle approve that decision?
A.  No.
Q.  To make the permanent Band Director instead of an Interim?
...
A.  No.  With the termination, we moved forward with the permanent position, as I stated before.
Q.  Okay.  Now, why was that recommendation made by you to make a permanent Band Director instead of an Interim in 2013 instead of 2012?
A.  I can't speculate as to why.
Q.  Well, its not speculation, Dr. Burgin.  You're the one who made the recommendation.  I'm just asking why you did that.  Why did you decide in 2012 instead of 2013?
A.  (No response).
Q.  I mean, was there a rational basis or was it just based on what you ate that day or was it based on – what was the reason you decided to make that recommendation in 2013 instead of 2012?
...
A.  We were moving forward in hiring or wanted to hire a Band Director and making it permanent.  A no cause termination was issued.

Burgin depo. at 97-101.

[15]Defendant's representation to the court otherwise is simply false.  *See* defendant's Memorandum (doc. 19), at 46-47 (representing that "Dr. Burgin considered Plaintiff's and several other candidates' applications for the permanent Director of Bands position (Burgin Depo. at 187)."  Dr. Burgin does not allege any such thing at page 187 of his deposition, or elsewhere.  Rather, throughout questioning on this very issue in his deposition, Dr. Burgin either refused to answer the question of whether plaintiff was considered for that position or claimed to not remember.

also side stepped the question as to plaintiff serving as Band Director, stating that he did not "recall any discussions with Mr. Yates" upon being asked if he knew plaintiff wished to be made Director of Bands.  Wims depo. at 174.  He further stated he did not know that plaintiff had applied for the position.  Wims depo. at 179.

In other words, both Burgin and Wims were unable to articulate any reason that plaintiff was not considered for the permanent Director of Bands position.  While defendant need not persuade the court that it was actually motivated by the reasons given for plaintiff's non-selection, it does have to produce evidence of a legitimate nondiscriminatory reason for the non-selection. *Kragor v. Takeda Pharmaceuticals America, Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012).  Because defendant fails to articulate any reason at all for not considering plaintiff, defendant fails to set forth a legitimate, non-discriminatory reason for plaintiff's non-selection.[16]    The court finds

---

[16]Other courts to consider the issue have found that the failure to reappoint an individual to a position he or she held is indeed an "adverse employment action."  As noted by the Middle District of Georgia,

> Indeed, Defendants have failed to show how Plaintiff's non-reappointment is not a serious and material change in the terms, conditions, or privileges of employment. Although Judge Randall has the discretion to decide whom to appoint, that discretion cannot be exercised in violation of the law. That Plaintiff was not promised or entitled to another term of service is a factor the jury can consider in its determination as to whether his non-reappointment constitutes an adverse employment action.

> The Court can find no Eleventh Circuit case law directly on point, and the Court is not persuaded by the case law and arguments presented and relied on by Defendants in support of their argument that failure to reappoint cannot constitute an adverse employment action as a matter of law. While the Eleventh Circuit has not specifically addressed this issue, other circuits have found that failure to reappoint is an adverse employment action. *See Doucet v. Univ. of Cincinnati*,

the above facts sufficient to establish plaintiff's prima facie case of retaliation.  The court has considered the legitimate non-discriminatory reasons offered for each of the actions by the defendant, the failure to give any reason plaintiff was not considered as a permanent Director of Bands, and plaintiff's evidence tending to demonstrate those non-discriminatory reasons were really a pretext for retaliation.

Taking the evidence in the light most favorable to the plaintiff, as the court must do on a motion for summary judgment, the court is of the opinion that a genuine issue of material fact remains in regard to plaintiff's claims of retaliation. Specifically, a multi-faceted investigation of plaintiff was begun almost immediately upon plaintiff filing an EEOC charge, and the defendant's evidence concerning legitimate, non-discriminatory reason for and knowledge of that investigation is in direct conflict with evidence offered by the plaintiff.  A police investigation close on

---

2007 WL 2445993, *5 (6th Cir. Aug.28, 2007) (failure to reappoint university professor potentially an adverse employment action); *Welch v. Ciampa*, 542 F.3d 927, 936 (1st Cir.2008) (plaintiff's non-reappointment to detective sergeant position constitutes adverse employment action sufficient to support § 1983 claim); *Rico–Sanz v. State of Louisiana*, 2006 WL 3147730, *7 (M.D.La. Oct.23, 2006) (because defendant did not explain how failure to reappoint plaintiff to his position as postdoctoral fellow had not effected a material change in the terms and conditions of his employment, court assumed plaintiff would be able to show adverse employment action); *Dorman v. Webster Central School District*, 576 F.Supp.2d 426, 429 (W.D.N.Y.2008) (plaintiff sufficiently demonstrated for purposes of proving prima facie case of discrimination that his failure to be reappointed as a coach was an adverse employment action). Thus, this Court cannot determine, as a matter of law, that Judge Randall's decision not to re-appoint Plaintiff did not constitute an adverse employment action.

*Watts v. Bibb County, Ga.,* 2010 WL 3937397, 7 (M.D. Ga. 2010).

the heels of an EEOC charge has been held "to rise above 'trivial harms' because it is likely that the initiation of an internal investigation against an employee would dissuade a reasonable worker from making or supporting a charge of discrimination. *See Entrenkin v. City of Panama City Florida*, 376 Fed. Appx. 987, 995 (11th Cir. 2010).

## CONCLUSION

The court having considered the foregoing, and finding that summary judgment is due to be granted in part and denied in part;

It is therefore **ORDERED** by the court that the defendant's motion for summary judgment (doc. 18) is **GRANTED** as to plaintiff's claim for gender discrimination, the court finding no genuine issues of material fact exist and that the defendant is entitled to judgment in its favor on this claim.

It is further **ORDERED** by the court that the defendant's motion for summary judgment is **DENIED** as to plaintiff's claim for retaliation, the court finding genuine issues of material fact remain.

**DONE** and **ORDERED** this the 2nd  day of April 2014.

_____
INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE